**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

CHOCTAW NATION OF OKLAHOMA, )
)
               Plaintiff, )
)
v. ) Case No. CIV-14-182-KEW
)
OCCIDENTAL FIRE AND CASUALTY )
COMPANY OF NORTH CAROLINA; and )
GENERAL STAR INDEMNITY COMPANY, )
)
               Defendants. )

**OPINION AND ORDER**

This matter comes before the Court on Plaintiff's Motion to Remand (Docket Entry #17). Plaintiff Choctaw Nation of Oklahoma (the "Nation") alleges it is insured by a commercial automobile liability insurance policy issued by Defendant Occidental fire and Casualty Company of North Carolina ("Occidental") with limits of $5,000,000 per accident and an excess automobile liability insurance policy issued by Defendant General Star Indemnity Company ("General Star") with limits of $5,000,000. The controversy surrounding these policies began when a bus carrying passengers to the Nation's Choctaw Casino & Resort was involved in an accident on April 11, 2013. The accident resulted in three deaths and injuries to the passengers. The victims brought claims against the Nation.

As a part of the mediation process on these claims, a stipulation agreement provided the victims would not seek damages directly from the Nation in excess of the insurance coverage. Defendants agreed as a part of the stipulation that they would

attend the mediation and make the insurance coverage available to the level of the Nation's established liability. Thereafter, the Nation alleges that Occidental refused to attend the medication, which it contends exposed the Nation to potential liability from direct claims brought by the victims in excess of the insurance coverage. General Star allegedly advised the Nation that if the Nation partially waived its sovereign immunity to the level of the insurance coverage, it might deny coverage altogether under the "failure to cooperate under the policy" provision.

The Nation commenced this case in the District Court in and for Bryan County, Oklahoma on April 4, 2014, seeking a declaratory judgment under the authority of Okla. Stat. tit. 12 § 1651 that (1) Defendants may not assert the Nation's sovereign immunity without the Nation's consent in order to avoid the application of the insurance coverage; (2) only the Nation may provide a limited waiver of its sovereign immunity to the level of insurance coverage provided; and (3) no provision of the insurance policy at issue in this case is breached by the Nation providing a limited waiver of sovereign immunity up to the level of insurance coverage. The Nation also brought a claim for breach of the duty of good faith and fair dealing as a result of Defendants' handling of the claim.

On May 12, 2014, Occidental removed this action to this

Court[1], citing broadly to 28 U.S.C. § 1331 which allows for original federal jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." More specifically, Occidental also stated in its Notice of Removal that it was asserting jurisdiction under 28 U.S.C. § 1362, which provides

> The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

Occidental encapsulates its basis for assumption of original jurisdiction under Section 1362 in stating that "[t]he basic issue raised by the Choctaw Nation's lawsuit is, who can assert the tribes sovereign immunity." See, *Notice of Removal* (Docket Entry #3) at p. 4. To further illustrate this point, Occidental cites to the Nation's original Petition filed in state court wherein the Nation stated that

> [t]here exists an actual controversy between the parties concerning whether Occidental or General Star may, without the Nation's express consent, assert sovereign immunity as a defense in any action filed, and/or otherwise prevent the Nation from giving a limited waiver of its sovereign immunity up to the amount of available insurance coverage.

---

[1] Occidental represented in the Notice of Removal that General Star "notified Occidental that it consents to this Notice of Removal." See, *Notice of Removal* (Docket Entry #3 at p. 2.

3

*Petition for Declaratory Judgment and Breach of Duty of Good Faith and Fair Dealing*, Docket Entry #3, Exh. 1 at p. 5, ¶ 20.

Generally, "'[f]ederal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" Gunn v. Minton, ___ U.S. ___, 133, 1059, 1064 (2013) quoting Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 377 (1994). As a result, "there is a presumption against [federal] jurisdiction, and the party invoking federal jurisdiction bears the burden of proof." McKenzie v. U.S. Citizenship and Immigration Servs., Dist. Director, 761 F.3d 1149, 1154 (10th Cir. 2014).

While Occidental contends this action turns upon "[w]hether an insurer can assert the defense of sovereign immunity on behalf of its insured, an Indian tribe" which it deems to be a federal question, this Court concludes this action involves solely state law claims which does not implicate federal question jurisdiction. Little doubt can remain that the Indian tribes possess sovereign immunity. "Indian tribes are 'domestic dependent nations' that exercise 'inherent sovereign authority.'" Michigan v. Bay Mills Indian Cmty., ___ U.S. ___, 134 S.Ct. 2024, 2030 (2014)(quoting Okla. Tax Comm'n v. Citizen Bank Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509, 111 S.Ct. 905). "The tribes' status as distinct, independent political communities qualified to exercise

powers of self-government arises from their original tribal sovereignty over their members rather than from any constitutional source." Montana v. Gilham, 133 F.3d 1133, 1137 (9th Cir. 1998). Thus, "tribes retain whatever inherent sovereignty they had as the original inhabitants of this continent to the extent that sovereignty has not been removed by Congress." Id.

Indian tribes are entitled to immunity from suit, particularly on matters integral to sovereignty and self-governance. See Santa Clara Pueblo v. Martinez, 436 U.S. 49, 55–58, 98 S.Ct. 1670 (1978) (citation omitted). Congress has plenary authority, however, to "limit, modify or eliminate the powers of local self-government which the tribes otherwise possess." Id. at 56, 98 S.Ct. 1670. Suits against Indian tribes are therefore barred absent congressional abrogation or a clear waiver from the tribe itself. Okla. Tax Comm'n v. Citizen Band of Potowatomi Indian Tribe of Okla., 498 U.S. 505, 509, 111 S.Ct. 905 (1991). "[T]o abrogate such immunity, Congress must 'unequivocally' express that purpose." Michigan v. Bay Mills Indian Cmty., ____ U.S. ____, 134 S.Ct. 2024, 2031 (2014) (quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670 (1978))(second modification and second internal quotation marks omitted). Indeed, when Congress intends to abrogate tribes' sovereign immunity, that intent cannot be implied, but must be "unequivocally expressed" in "explicit legislation."

Krystal Energy Co. v. Navajo Nation, 357 F.3d 1055, 1056 (9th Cir. 2004)(internal quotation marks omitted). Thus, the existence of sovereign immunity in the Nation is not contestable under the circumstances of this case.

Occidental characterizes the issue in this case as whether it may assert or waive the Nation's sovereign immunity in connection with insurance coverage on a claim made on the policy. It has not been suggested that Congress provided authority for an insurer such as Occidental to abrogate, waive, or otherwise assert the sovereign immunity of an Indian nation through appropriate legislation. Consequently, the source of the waiver must be the Nation itself. The sole unequivocal statement of the relationship between the Nation and the insurers is the policy itself. Indeed, Occidental recognizes this fact by relying upon certain provisions within the policy to argue the Nation has specifically granted it a waiver or control over the assertion of sovereign immunity.[2] The interpretation of the terms of the policy as a contract is governed exclusively by state law.

This does not end the inquiry into whether federal question jurisdiction exists under either 28 U.S.C. §§ 1331 or 1362.

---

[2] In its response to the Motion, Occidental cites to the policy language which grants it the "right to control the defense of Choctaw Nation" and which requires the Nation to "[c]ooperate with us in the . . . defense against the 'suit.'" See, *Defendant Occidental Fire and Casualty Company of North Carolina's Response to Plaintiff Choctaw Nation of Oklahoma's Motion to Remand* (Docket Entry #26) at p. 3.

Federal question jurisdiction may exist if (1) the Nation's cause of action arises under federal law; or (2) the Nation's state law claims "raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg., 545 U.S. 308, 312-14 (2005). As stated, the Nation's action arises exclusively and expressly from state contract and bad faith law. The assertion of state law claims in this case does not involve an actual dispute in the assertion of federal law or a federal issue - the Nation's sovereign immunity is intact and not disputed. The question presented by this action is whether the assertion or waiver of sovereign immunity by the Nation affects the terms of the contract between the parties requiring the exclusive application of state law.

Occidental's reliance upon the line of cases which finds federal question jurisdiction over the appropriate application of sovereign immunity by an Indian nation or tribe is of no moment to the dispute represented in this action. The Nation's ability to assert or waive sovereign immunity is not challenged. See, Kiowa Tribe of Okla. v. Manuf. Technologies, Inc., 523 U.S. 751, 760 (1998)("Tribes enjoy immunity from suits on contracts, whether those contracts involve governmental or commercial activities and

7

whether they were made on or off a reservation. Congress has not abrogated this immunity, nor has petitioner waived it, so the immunity governs this case."); Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians, 471 U.S. 845, 857 (1985)("§ 1331 encompasses the federal question whether a tribal court has exceeded the lawful limits of its jurisdiction, and . . . exhaustion is required before such a claim may be entertained by a federal court."); Normandy Apartments, Ltd. v. United States Dept. of Housing and Urban Development, 554 F.3d 1290 (10th Cir. 2009)(addressing the assertion of governmental, non-tribal sovereign immunity). As a result, no federal issue is "actually in dispute" in this action.

Moreover, no substantial federal issue is implicated in this case. The claims in this case surround a unique but routine insurance contract dispute. It is unique only because of the nature of the right which the insurers seek to control through their contractual relationship with the Nation - the application and exercise of sovereign immunity. The contract itself will control on this question and the principles of state contract law. No basis exists to disturb the traditional balance between state and federal interests in this dispute over a contract simply because one party to the contract is an Indian tribe.

Occidental also contends that federal question jurisdiction is found on the face of the Nation's well-plead complaint. Under this

rule, the face of the complaint must show the federal question which gives rise to federal jurisdiction. Karnes v. Boeing Co., 335 F.3d 1189, 1192 (10th Cir. 2003). It is recognized that the plaintiff is "the master of his claims and may choose to have his claims heard in state court by avoiding claims based on federal law." Id. at 1193 citing Caterpillar v. Williams, 482 U.S. 386, 398-99 (1987). As a result, a defendant cannot introduce a federal question into the action which is governed by state law and transform the case into one arising under federal law. Id.

On the face of the Petition, the Nation seeks declaratory relief upon the parties' obligations and rights under the insurance contracts as well as a judgment for bad faith - both purely state law claims. The insertion of sovereign immunity into the case arises because that is the assertion of immunity represents the right which is claimed under the contract and because the Nation anticipates the insurers' defense to the claims. The anticipation of a defense within a well-plead complaint cannot convert a state law claim into one arising from a federal question. Okla. Tax. Comm'n v. Graham, 489 U.S. 838, 841 (1989).

The final issue raised in this case is whether General Star has appropriately joined in the request to remand. Generally, an action must be removed within thirty days after a defendant's receipt of the initial pleading. 28 U.S.C. § 1446(b)(1). "[A]ll

defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). If this requirement is not met, the notice of removal is procedurally defective. 28 U.S.C. § 1447(c). While the Tenth Circuit Court of Appeals has not established the requirements for multiple defendants joining or consenting in the removal, this Court concurs with those courts that require "each party must independently and unambiguously file notice of their consent and intent to join in the removal within the thirty day period allowed." Jarvis v. FHP of Utah, Inc., 874 F.Supp. 1253, 1254 (D.Utah 1995). "There is nothing unfair about requiring each defendant to either sign the notice of removal, file its own notice or removal, or file a written consent or written joinder to the original notice of removal." Id. at 1255. Certainly, the representation in the notice of removal that General Star consents to the remand is insufficient. See, Forsythe v. City of Woodward, Okla., 2013 WL 5230005 (W.D. Okla.)("courts at all levels of the federal judiciary require written consent by all of the defendants, either in the notice of removal or in other papers filed with the district court. Thus, the mere statement by the removing attorney that the other Defendants consented was insufficient."); State Farm Fire and Casualty Co. v. Dunn-Edwards Corp., 728 F. Supp 2d. 1273, 1277 (D.N.M. 2010)(noting that "the majority of circuit courts

require written, timely consent from each defendant" and stating that "[i]f you represent a served, properly joined defendant who consents to a con-defendant's removal, you must sign the notice of removal on behalf of your client, file your own notice of removal, or file a notice of consent to removal within the thirty-day removal period"); McEntire v. Kmart Corp., 2010 WL 553443 at 5 (D.N.M. 2010) ("it is insufficient for the removing defendant, in its notice or removal, to represent that all other defendants consent to removal"); McShares, Inc. V. Barry, 979 F.Supp. 1338, 1342 (D.Kan. 1997)("[e]ach party must independently and unambiguously file notice of its consent and its intent to join in the removal within the thirty-day period"); Prod. Stamping Corp. V. Maryland Cas. Co., 829 F.Supp. 1074, 1076 (E.D. Wis 1993) (favorably noting that the majority view is that "mere assertion in a removal petition that all defendants consent to removal fails to constitute a sufficient joinder"); Landman v. Borough of Bristol, 896 F.Supp. 406, 409 (E.D.Pa. 1995) (citations omitted)("[s]tatements made in a removal petition concerning a co-defendant's position on removal are inappropriate without some form of filing by the co-defendant").

As noted in this case, Occidental included a statement within the Notice of Removal that General Star notified Occidental that it consented to the removal. No other express written statement of

11

consent or joinder in the removal was filed by General Star within the thirty day period. Consequently, in addition to the bases already set forth in this Opinion and Order, remand is required as the removal was procedurally defective.

IT IS THEREFORE ORDERED that Plaintiff's Motion to Remand (Docket Entry #17) is hereby **GRANTED**. Accordingly, this case is hereby **REMANDED** to the District Court in and for Bryan County, Oklahoma.

IT IS SO ORDERED this 13th day of January, 2015.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE